IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUEL ALLEN, | ) Case No. 09-2507 SC |
| Plaintiff, | ) |
| | ) ORDER GRANTING IN PART AND |
| v. | ) DENYING IN PART MOTION TO |
| | ) DISMISS |
| UNITED FINANCIAL MORTGAGE CORP.; | ) |
| ALLIANCE BANKCORP; MORTGAGE | ) |
| ELECTRONIC REGISTRATION SYSTEMS, | ) |
| INC.; CALIFORNIA RECONVEYANCE CO.; | ) |
| GMAC MORTGAGE; JP MORGAN CHASE | ) |
| BANK; INVESTORS MORTGAGE AND | ) |
| REALTY; DOES 1 to 25, inclusive, | ) |
| | ) |
| Defendants. | ) |

## I. INTRODUCTION

Now before the Court is a single Motion to Dismiss ("Motion") filed on behalf of Defendants JPMorgan Chase Bank, N.A. ("JPMorgan") and California Reconveyance Co. ("CRC") (collectively, "Defendants").[1] Docket No. 31. Defendants seek to dismiss Plaintiff Euel Allen's ("Plaintiff's") First Amended Complaint ("FAC"), Docket No. 29, which Plaintiff submitted after this Court dismissed portions of his original Complaint, see Docket No. 25 ("Sept. 15, 2009 Order"). The Motion is fully briefed. Docket Nos. 38 ("Opp'n"), 39 ("Reply"). The Court has concluded that this matter is appropriate for determination without oral argument. For

---
[1] No other Defendant participated in this Motion.

the reasons stated below, Defendants' Motion is GRANTED IN PART and DENIED IN PART.

## II. DISCUSSION

The parties are familiar with the factual background for this dispute as well as the applicable legal standards, which this Court outlined in its previous Order. See Sept. 15, 2009 Order at 2-4. The FAC adds a number of allegations to Plaintiff's case, some of which are relevant to the claims that Defendants now seek to dismiss. The Court will address these new claims in the context of each cause of action below.

### A. TILA and HOEPA

Plaintiff's first cause of action alleges that JPMorgan, as well as a number of other Defendants, violated the Truth In Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq., as well as the Home Ownership and Equity Protection Act of 1994("HOEPA"), id. §§ 1639 et seq. The only basis for dismissal that JPMorgan advances for this cause of action is the one-year statute of limitations placed upon actions to recover damages under either statute.[2] 15 U.S.C. § 1640(e); Mot. at 4-5. As this Court previously noted, Allen entered into the loans in October of 2006, and did not file suit until May of 2009, well after the statute of limitations had expired. Sept. 15, 2009 Order at 6. The Court previously dismissed Plaintiff's claim for damages, with leave to amend, and invited Plaintiff to allege a factual basis for equitable tolling. Id. In his FAC, Plaintiff has attempted to provide such

---

[2] Defendants do not seek to dismiss Plaintiff's claim for rescission, which he asserts through the same cause of action.

2

1  allegations.  See FAC ¶ 32.

2      A TILA suit for damages must generally be brought "within one
3  year from the date of the occurrence of the violation," which
4  courts have interpreted as meaning "within a year from consummation
5  of the transaction."[3]  King v. California, 784 F.2d 910, 915 (9th
6  Cir. 1986).  Nevertheless, "equitable tolling might be appropriate
7  in certain circumstances," and courts may deem the statute tolled
8  "until the borrower discovers or had reasonable opportunity to
9  discover the fraud or nondisclosures that form the basis of the
10 TILA action."  Id.  "[P]laintiffs seeking to toll the statute of
11 limitations on various grounds must have included the allegation in
12 their pleadings."  Wasco Prods. v. Southwall Techs., Inc., 435 F.3d
13 989, 991 (9th Cir. 2006); see also Pace v. DiGuglielmo, 544 U.S.
14 408, 418 (2005) (recognizing that plaintiff bears burden of
15 establishing basis for tolling).  Where equitable tolling may be
16 applicable to a federal claim, the "claim accrues . . . upon
17 awareness of the actual injury, not upon awareness that this injury
18 constitutes a legal wrong."  Lukovsky v. San Francisco, 535 F.3d
19 1044, 1049 (9th Cir. 2008) (quoting Amini v. Oberlin College, 259
20 F.3d 493, 500 (6th Cir. 2001)); accord Norgart v. Upjohn Co., 21
21 Cal. 4th 383, 397-98 (1999) ("[T]he plaintiff discovers the cause
22 of action when he at least suspects a factual basis, as opposed to
23 a legal theory, for its elements, even if he lacks knowledge
24 thereof -- when, simply put, he at least suspects that someone has
25 done something wrong to him, wrong being used, not in any technical

---

[3] This time limit does not apply to claims for rescission under TILA, which "shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first."  15 U.S.C. § 1635(f).

3

1  sense, but rather in accordance with its lay understanding."
2  (internal citations and quotation marks omitted)).
3      Plaintiff claims that he did not receive the Federal Truth in
4  Lending Disclosure Statement ("TILA Statement") "until after escrow
5  closed." FAC ¶ 13. He claims that the document only summarized a
6  portion of the loan that he received, while ignoring a portion
7  secured by a second deed of trust for which no statement was ever
8  received. Id. The document also omitted certain required
9  disclosures and falsely stated the amount of payments under the
10 loan. Id. On April 30, 2009, only after he received a copy of the
11 Notice of Trustee's Sale and sought the advice of an attorney, did
12 Plaintiff "learn[] for the first time that he was entitled to TILA
13 documents immediately after he applied for the loan, and that the
14 disclosures on their face were apparent violations of TILA and
15 HOEPA." Id. ¶ 41.
16     The FAC does not present a plausible case for equitable
17 tolling. Plaintiff would have had a reason to suspect wrongdoing
18 once he received lending documents that contained amounts that
19 differed significantly from the amounts that he had previously
20 agreed to. His cause of action accrued whenever he received the
21 TILA Statement, because the violations were, according to
22 Plaintiff, apparent on the face of the documents. Id. The FAC
23 does not clearly indicate when Plaintiff received the TILA
24 Statement -- only that he received it sometime "after escrow
25 closed." Id. ¶ 13. If he received it any time before May of 2008
26 -- and no allegation suggests otherwise -- then his cause of action
27 accrued more than one year before he filed this action. At best,
28 the FAC suggests around April 30, 2009, Plaintiff finally realized

4

the extent of his injury (by receiving the Notice of Trustee's Sale), and the fact that the omissions and misstatements in his loan documents constituted violations of particular federal statutes (i.e., he discovered an applicable legal theory). Plaintiff's prior ignorance of these facts does not toll the statute of limitations.

This Court has already granted Plaintiff leave to amend this cause of action, with specific instructions to allege tolling. Plaintiff's claim for damages under TILA and HOEPA is therefore DISMISSED WITH PREJUDICE.  However, Defendants have not sought to disturb Plaintiff's rescission claim, which is governed by TILA's three-year statute of limitations.  Plaintiff's rescission claim therefore remains undisturbed by this Order.

**B.    Fraud**

Plaintiff's second cause of action alleges fraud against JPMorgan and a number of other defendants, based around misrepresentations contained in the loan origination documents. FAC ¶ 50.  Plaintiff also alleges that he was "lulled" into a false sense of security by employees of Washington Mutual, and later JPMorgan, who instructed him not to make payments in order to avoid forfeiture of his right to modify his loans.  Id. ¶¶ 23-28, Ex. D ("Allen Letter").

As to Plaintiff's first fraud claim, which alleges fraud in connection with the origination of the loan, JPMorgan contends that it cannot be held liable for its role as successor to the lender of this mortgage.  Mot. at 6-7.  According to the Deeds of Trust for Plaintiff's loans, Plaintiff received one loan from Defendant United Financial Mortgage Corp, and another loan from Alliance

5

1  Bankcorp.  See Request for Judicial Notice ("RJN"), Docket No. 32,
2  Exs. 3 ("First DoT") at 1, 4 ("Second DoT") at 1.[4]  Plaintiff
3  alleges that Washington Mutual acquired both of these loans from
4  the original lenders, and that JPMorgan later succeeded Washington
5  Mutual in its role.  FAC ¶¶ 17, 19.  However, JPMorgan did not
6  acquire these loans in full, directly from Washington Mutual.
7  According to JPMorgan, the Office of Thrift Supervision appointed
8  the Federal Deposit Insurance Corporation ("FDIC") as the receiver
9  for Washington Mutual, and the FDIC thereby "took over the assets
10 of" Washington Mutual and assumed the power to transfer its assets
11 and liabilities.  12 U.S.C. §§ 1821(d)(2)(A)(i), 1821 (d)(2)(B)(i),
12 1821(d)(2)(G)(i).  The FDIC thereafter entered into a Purchase and
13 Assumption Agreement with JPMorgan, wherein JPMorgan assumed
14 assets, but not associated liabilities, that had belonged to
15 Washington Mutual.  RJN Ex. 8 ("PAA").
16     Part of the PAA states:

> [A]ny liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any form of relief to any borrower . . . related in any way to . . . any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank.

Id. § 2.5.  Other Courts that have interpreted this provision have concluded that "JPMorgan Chase expressly disclaimed assumption of liability arising from borrower claims," thereby leaving "the FDIC as the responsible party with respect to those claims."  Hilton v.

---

[4] The Court GRANTS Defendants' Request for Judicial Notice for the same reasons stated in its previous Order.  See Sept. 15, 2009 Order at 4-5.

6

Wash. Mut. Bank, No. 09-1191, 2009 U.S. Dist. LEXIS 100441, *6-9 (N.D. Cal. Oct. 28, 2009) (quoting Cassese v. Washington Mutual Bank, 05-2724, slip op. at 6 (E.D.N.Y. Dec. 22, 2008)); see also Payne v. Security Sav. & Loan Ass'n, 924 F.2d 109, 111 (7th Cir. 1991) ("Absent an express transfer of liability by the [Receiver] and an express assumption of liability by Security Federal, FIRREA directs that [the Receiver] is the proper successor to the liability at issue here."). This Court may consider this evidence, which is subject to judicial notice, without converting the Motion to Dismiss into a motion for summary judgment. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). Based on this evidence, the Court concludes that JPMorgan is not a proper defendant to this particular "borrower claim."

The PAA explicitly does not relieve JPMorgan from any liability that it has incurred in its role as a loan servicer. PAA § 2.1; see also Punzalan v. Federal Deposit Insurance Co., No. 09-0087, 2009 U.S. Dist. LEXIS 57829, *3 (W.D. Tex. July 9, 2009) ("Chase Bank purchased Washington Mutual on the condition that FDIC remain responsible for any 'Borrower Claims' . . . 'in connection with Washington Mutual's lending or loan purchase activities.' In exchange . . . Chase Bank promised to assume responsibility for all other liabilities, specifically including 'all mortgage servicing rights and obligations of Washington Mutual.'" (citations omitted)). JPMorgan therefore may still be held liable for fraudulent representations made in the course of its provision of loan services to Plaintiff.

Plaintiff also alleges that since purchasing his loan from Washington Mutual, JPMorgan has acted as the servicer for his

7

1  loan.[5]  FAC ¶¶ 19.  In particular, he alleges that he was working
2  with Washington Mutual to modify his loan when it was purchased by
3  JPMorgan in late 2008, and that JPMorgan represented to him that it
4  was continuing to process his modification package after the
5  purchase.  Id. ¶¶ 23-26.  The FAC references and attaches a letter
6  from Plaintiff to Washington Mutual and JPMorgan, which refers to a
7  "March 2, 2009 phone conversation with Mr. Jason" as well as "your
8  letter dated January 8, 2009," which "stated that during this time
9  if I make any kind of payment or agree to a repayment plan then I
10 will forfeit my modification."  Allen Letter at 1.[6]  The FAC
11 therefore includes a plausible allegation that JPMorgan may have
12 committed wrongdoing while acting as Plaintiff's loan servicer.
13     JPMorgan's Reply includes a token recitation of the
14 requirements of Rule 9(b) of the Federal Rules of Civil Procedure,
15 which requires fraud claims to be pled with specificity.  Reply at
16 5-6.  JPMorgan faults Plaintiff for failing to allege who,
17 specifically, made the representations, as well as "when and where,
18 and exactly what was said."  Id.  However, the FAC identifies a
19 particular letter, dated January 8, 2009, in which JPMorgan made at
20 least one potentially misleading statement.  Plaintiff's claim for
21 fraud is therefore sufficiently detailed to put JPMorgan on notice
22 as to the claims against it.  See Bly-Magee v. California, 236 F.3d

---

[5] It is not clear whether JPMorgan has acted in this capacity with respect to one or both of Plaintiff's loans.  It appears that one loan was transferred to Defendant GMAC Mortgage at some point.  FAC ¶¶ 21-22.

[6] Although it is not clear from the FAC whether Plaintiff's letter was referring to a letter sent by JPMorgan or Washington Mutual, the Court notes that by January 8, 2009, JPMorgan had already entered into the PAA to acquire Washington Mutual's assets.  See PAA at 1.

8

1014, 1019 (9th Cir. 2001) (allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong" (citations and quotation marks omitted)).

Plaintiff's second cause of action for fraud is DISMISSED WITH PREJUDICE as to JPMorgan only, to the extent that it alleges fraud in the origination of the loans. This cause of action is undisturbed to the extent that it alleges fraud in the provision of loan services.

### C.  RESPA

Plaintiff alleges that Defendants violated RESPA by failing to notify him of certain assignments of the loan and its servicing rights, and failed "to provide meaningful toll-free access for Plaintiff to secure information regarding the status of the obligations." FAC ¶ 55. The Court previously dismissed this cause of action because Plaintiff failed to allege that he suffered any pecuniary loss as a result of these alleged violations. Sept. 15, 2009 Order at 11-13. Plaintiff has since added the following allegation:

> As a proximate result of Defendants', and each of them [sic], breach, Plaintiff has been damaged in that he at the time of the loan was not financially able to pay a monthly mortgage payment of more than $2,000.00 and that as a result he fell behind in his payments on the mortgage, his credit was impacted negatively, he suffered many sleepless nights and much emotional distress knowing that he was no longer able to pay the mortgage.

FAC ¶ 58.

Plaintiff does not describe why Defendants' failure to provide

9

proper notices of assignment of servicing rights and ownership of the security instruments for the loans resulted in his inability "to pay a monthly mortgage payment of more than $2,000.00 . . . ." See id. He does not allege, in more than a conclusory manner, any pecuniary loss that resulted from a failure to provide the requisite notices. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion for dismissal. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). As this Court previously noted, the requirement that plaintiffs plead pecuniary damage is not a mere pleading formality; it is a requirement that "has the effect of limiting the cause of action to circumstances in which plaintiffs can show that a failure of notice has caused them actual harm." Sept. 15, 2009 Order at 12. Even if Plaintiff is correct in claiming that Defendants' other conduct resulted in his inability to pay his mortgage, this does not constitute a RESPA claim unless Plaintiff can point to some colorable relationship between his injury and the actions or omissions that allegedly violated RESPA.

Plaintiff also alleges that "[b]y virtue of said [RESPA] failures, [CRC] is not the lawful Trustee and lacked jurisdiction to record a Notice of Default, a Notice of Sale, or to conduct a Trustee Sale or to record any Trust Deed." FAC ¶ 56. Regardless of whether the FAC states a separate basis for voiding any of the instruments related to Plaintiff's mortgage or the foreclosure proceedings, this Court is not aware of (and Plaintiff has not drawn this Court's attention to) any law or regulation that may render an instrument void or voidable based solely on a failure to follow the notice requirements of RESPA. Instead, RESPA allows for

10

"any actual damages to the borrower as a result of [a] failure" to follow its provisions. See 12 U.S.C. § 2605(f); see also 12 U.S.C. § 2615 ("Nothing in this Act shall affect the validity or enforceability of any sale or contract for the sale of real property or any loan, loan agreement, mortgage, or lien made or arising in connection with a federally related mortgage loan."). Plaintiff's third cause of action for violation of RESPA is DISMISSED WITH PREJUDICE as to all Defendants.

### D.   Fair Debt Collection Practices Act ("FDCPA")

Plaintiff claims that CRC violated the FDCPA, 15 U.S.C. §§ 1692, et seq. FAC ¶ 60. This Court previously dismissed this claim because Plaintiff failed to allege that any particular Defendant was a "debt collector" as defined by the Act. Sept. 15, 2009 Order at 13-14. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

The FAC now includes the strained allegation that "Defendants all are debt collectors," but also includes more specific allegations referencing CRC. FAC ¶ 60. According to Plaintiff, CRC was neither an originator of the loans nor a servicer. In particular, Plaintiff notes that "CRC acquired its interest in these transactions after Plaintiff defaulted on the obligations."[7]

---

[7] Because of this allegation, this case is distinguishable from numerous decisions among this circuit's district courts, which have held that "the FDCPA does not apply to non-judicial foreclosure proceedings since a debt collector for purposes of the Act does not

11

1  Id.  At this stage of the litigation, this Court may infer that CRC
2  acquired its interest in the loan or loans in order to foreclose on
3  Plaintiff's property, or to collect upon Plaintiff's debt.
4  Plaintiff's allegations are consistent with his claim that CRC is a
5  debt collector, and he has satisfied his low burden at the pleading
6  stage for establishing that CRC is a "debt collector" under the
7  FDCPA.

8      Defendants also claim that the act of foreclosure cannot serve
9  as the basis for an FDCPA claim.  Mot. at 9.  Defendants cite a
10 number of cases on this point, including Hulse v. Ocwen Fed. bank,
11 FSB, which held that "[f]oreclosing on a trust deed is distinct
12 from the collection of the obligation to pay money. . . .  Payment
13 of funds is not the object of the foreclosure action.  Rather, the
14 lender is foreclosing its interest in the property."  195 F. Supp.
15 2d 1188, 1204 (D. Or. 2002); see also Mansour v. Cal-Western
16 Reconveyance Corp., 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009)
17 ("[A] non-judicial foreclosure proceeding is not the collection of
18 a 'debt' for purposes of the FDCPA."); Izenberg v. ETS Servs., LLC,
19 589 F. Supp. 2d 1193, 1999 (C.D. Cal. 2008) (same); Heinemann v.
20 Jim Walter Homes, Inc., 47 F. Supp. 2d 716, 722 (D.W.Va.1998),
21 aff'd, 173 F.3d 850 (4th Cir.1999) (same).

22     Among the district courts of the Ninth Circuit, Hulse is
23 perhaps the most widely cited for the proposition that "the
24 activity of foreclosing on the property pursuant to a deed of trust

---

include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."  Suetos v. Bank of Am. Nat'l Ass'n, No. 09-727, 2010 U.S. Dist. LEXIS 20538, *11-12 (E.D. Cal. Mar. 8, 2010) (quoting Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir.).

is not the collection of a debt within the meaning of the FDCPA." 195 F. Supp. 2d at 1204. This rule has become widely adopted among the district courts of this circuit. However, Plaintiff points out that the conclusions of Hulse have been called into question. Indeed, the Fourth Circuit has explicitly disagreed with the reasoning in Hulse, and has concluded that a "'debt' remain[s] a 'debt' even after foreclosure proceedings commenced," and that actions "surrounding foreclosure proceedings -- including "an eviction notice required by statute" -- can be considered attempts to collect such debts. Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 376 (4th Cir. 2006) (citing Romea v. Heiberger & Assocs., 163 F.3d 111, 116 (2d Cir. 1998); Shapiro & Meinhold v. Zartman, 823 P.2d 120, 124 (Colo. 1992)). Similarly, the Fifth Circuit has concluded that "a party who satisfies § 1692a(6)'s general definition of a 'debt collector' is a debt collector for the purposes of the entire FDCPA even when enforcing security interests." Kaltenback v. Richards, 464 F.3d 524, 528-29 (5th Cir. 2006); but see Brown v. Morris, 243 Fed. Appx. 31, 35-36 (5th Cir. 2008) (finding that "a foreclosure is not per se FDCPA debt collection," and finding no error in jury instruction that "[o]rdinarily, the mere activity of foreclosing . . . under a deed of trust is not the collection of a debt within the meaning of the [FDCPA] unless other actions are taken beyond those necessary to foreclose under the deed of trust, and were taken in an effort to collect a debt" (brackets in appellate order)).

 As far as this Court is aware, neither Wilson nor Kaltenback have been addressed by district courts in the Ninth Circuit. In their Reply, Defendants do not even attempt to discuss the

13

countervailing authority presented by Plaintiff.  Instead, Defendants completely ignore Plaintiff's arguments in support of his FDCPA claim, and simply repeat their citation to Hulse and Heinemann.  Reply at 5.  This Court finds the reasoning in Wilson compelling, but it is not yet willing to conclude whether it applies fully to this case,[8] or that it undercuts the recent trends among district courts within the Ninth Circuit.  In the absence of any responsive briefing the topic, Defendants have failed to persuade this Court that Plaintiff may not pursue his FDCPA claim against CRC on the basis of CRC's conduct in relation to the non-judicial foreclosure process.  The Court may revisit the applicability of the FDCPA at a later time, if and when Defendants are willing to address the matter fully.

**III. CONCLUSION**

Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's first cause of action is DISMISSED WITH PREJUDICE, as to all Defendants, only with respect to his claim for damages. Plaintiff's claim for rescission in his first cause of action remains intact as to all Defendants.

Plaintiff's second cause of action for fraud is DISMISSED WITH PREJUDICE only with regard to his claims arising out of the origination of the loans, and only as to Defendant JPMorgan. Plaintiff's allegations of fraud based on JPMorgan's alleged

---

[8] Unlike in Wilson, Plaintiff does not base his allegations of unfair debt collection on any activity or communication outside of those required by the relevant foreclosure statutes.  However, such allegations do not appear to be central to the reasoning in Wilson. See 443 F.3d at 376.

14

provision of loan services is not dismissed.  Plaintiff's second cause of action remains intact in all other regards and with respect to all other Defendants.

Plaintiff's third cause of action is DISMISSED WITH PREJUDICE.

Plaintiff's fourth, fifth, and sixth causes of action are not disturbed by this Order.

The parties are ordered to appear for a case management conference that will take place on Friday, April 9, 2010, at 10:00 a.m. in Courtroom 1, on the 17th floor, U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102.

IT IS SO ORDERED.

Dated: March 22, 2010



UNITED STATES DISTRICT JUDGE

15